[No. D010929. Fourth Dist., Div. One. Nov. 30, 1990.]

SCORE FAMILY FUN CENTER, INC., et al., Plaintiffs and Appellants, v.
COUNTY OF SAN DIEGO et al., Defendants and Respondents.

1218

COUNSEL

Michael L. Jimmink and Ken Roush for Plaintiffs and Appellants.

Lloyd M. Harmon, Jr., County Counsel, and Pamela T. Jones, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**KREMER, P. J.**—The owners[1] of four "Mini-Boy 7" video games, which were confiscated as illegal slot machines by sheriff's deputies, sued the sheriff and his department to recover the video games and damages. The owners contend the video games are not illegal slot machines and that the statutory scheme allowing confiscation violates due process. We affirm.

## FACTS

The Mini-Boy 7 is a video game which has seven games: draw poker, seven card stud, blackjack, baccarat, hi-lo, double-up and craps. The screen displays cards or a craps table. When a player inserts a quarter into the machine, he is given 10,000 points to wager and can play up to 4 of the games. The game terminates if the player loses all his points. If a player wins, he not only receives points but also becomes entitled to double his points by playing a free game of hi-lo. In the hi-lo game, the machine simulates dealing one card face down and asks the player if the card is high (eight or above) or low (ace to six) (seven is a house card). Winning the hi-lo game entitles the player to another hi-lo game.

## DISCUSSION

### I

### *The Mini-Boy 7 is a Slot Machine*

■■ ■■■ The owners contend the Mini-Boy 7 video game is not a slot machine.[2]

---

[1] The owners are: Score Family Fun Center, Inc., Electric Grandmother, Inc., and Bernie and Edith Cline.

[2] The sheriff contends this issue is resolved by application of the substantial evidence rule. The sheriff points out that under the substantial evidence rule, the reviewing court defers to the trial court's factual findings and explains: "The rationale for this substantial evidence rule is that the trial judge is in a much better position to get 'the feel of the case.' [Citation.] This is especially valid in a case such as this wherein the trial judge was able to personally observe the functioning of the video poker machines."

This is not a substantial evidence case. The substantial evidence rule applies where there are conflicts in the evidence or the inferences which may be drawn from the evidence. The

 The Penal Code defines a slot machine to include a machine, operated by inserting a coin, through which, "by reason of any element of hazard or chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, credit, allowance or thing of value or additional chance or right to use such slot machine . . . ." (Pen. Code, § 330b, subd. (2).) A reward of extended play by a video game for winning is a "thing of value" within the meaning of the Penal Code definition. (*Merandette* v. *City and County of San Francisco* (1979) 88 Cal.App.3d 105, 114 [151 Cal.Rptr. 580].)

The owners first argue the Mini-Boy 7 video game is not a slot machine because, they explain, the additional hi-lo game "is a choice, not a free game, and is a part of the game given for twenty-five cents." This "choice," however, occurs only when a player wins. It results in extending the playing time and is a reward of an "additional chance or right to use" the Mini-Boy 7 video game.

The owners next argue the Mini-Boy 7 video game is not a slot machine because the Penal Code requires not only the element of hazard or chance to be present but also that the outcome be unpredictable to the player. They assert the Mini-Boy 7 is predictable. The owners explain:

"Since cards or dice are simply numerical substitutes, the outcome of every hand is mathematically predictable, just as the outcome of the California State Lottery is mathematically predictable. Admittedly, the outcome of the California State Lottery may have odds of 14,000,000 to one, nonetheless, it is predictable.

"The [L]egislature did not require that the outcome be precisely determinable, nor that it be consistently the same, nor does the statute talk about the probability of the outcome, it only requires that the outcome be unpredictable to the user. [Citation.]

"It is respectfully submitted that in 1950 when the [L]egislature enacted Penal Code section [330b, subd. (2)], it was not addressing the Mini-Boy 7 video game, whose technology did not exist. [Citation.]

rule recognizes the trial judge's superior position for assessing, for example, the credibility of witnesses, i.e., the trial judge can observe a witness's demeanor and hear not only the words used but how they are used. Here, there is no dispute in the evidence nor does the trial judge's opportunity "to personally observe the functioning of the video poker machines" require deference; we have the same opportunity. (There is no issue here as to the machine's reliability.) This is not a case turning on the credibility of witnesses or machines. This case presents a question of law.

"The [L]egislature used the word 'unpredictable' in the statute. The record shows that at that time in history there were games which had unpredictable outcomes such as the one ball pin ball machine which had no flippers or other means to control the course of the ball which was shot through a series of randomly placed nails. [Citation.]"

We find these arguments unpersuasive. First, the owner's premise that to be an illegal slot machine, the results of playing the game must occur both "by reason of any element of hazard or chance" *and* be unpredictable to the user is not supported by the language of the statute. The statute provides a machine is a slot machine if "by reason of any element of hazard *or* chance *or* of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, credit, allowance or thing of value or additional chance or right to use such slot machine . . . ." (Pen. Code, § 330b, subd. (2).)

Second, the ability to calculate the mathematical odds of a particular result does not equate to a conclusion a result is predictable to the user. A calculation of odds is merely a calculation of likelihood; it does not result in the game becoming predictable to the user. The owners' use of the lottery example demonstrates this. While one may be able to calculate the odds of winning, this calculation does not predict, to the individual player, whether his particular ticket will be a winner. As to the individual player, the result of his play (purchasing a ticket) is unpredictable. The same is true in playing the Mini-Boy 7 video game; the player cannot predict whether his choice will win or lose.[3]

Nor are we persuaded by the owners' argument that the Mini-Boy 7 cannot be considered a slot machine because its technology did not exist when the Legislature enacted Penal Code section 330b. In 1979, the court held in *Merandette* v. *City and County of San Francisco, supra*, 88 Cal.App.3d 105, that a video game could come under the statutory definition of a slot machine. Had the Legislature intended to exclude video games from the definition of a slot machine, they could have amended the statute after the *Merandette* decision was issued. The fact the Legislature did not so amend the statute tends to indicate the Legislature agreed with *Merandette*'s interpretation. ■ (See *Wilkoff* v. *Superior Court* (1985) 38

---

[3] We find interesting the testimony given by the owners' witness to a question whether he could predict the probability of the outcome of one roll of the dice. The witness answered that he could, explaining: "Um, well, *I figure that it's all random, the chance of any one die coming up any one of the six patterns is random.* And according to odds, there is a one in six chance of the first dice being one thing—say we'll go with the craps, a one and a two, in that order. Um, there is a one in six chance of getting that particular roll." (Italics added.)

Cal.3d 345, 353 [211 Cal.Rptr. 742, 696 P.2d 134] [" 'Where a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it.' "].)

The owners also argue the Mini-Boy 7 is not predominantly a game of chance. They base this argument on the use of such practices as card counting. The owners' argument, however, rests on assumptions which are unsupported by the evidence, e.g., an assumption the computer uses one 52-card deck. The Attorney General faced a similar argument with a video game of "21" and made comments which are applicable here:

"We believe the electronic game of '21' described to us presents the user with only the illusion of skill. The player is confronted with a computer program the nature of which is unknown to him. With the pressing of a button, the user does not know what the intricate electric circuitry will produce on the video screen. He cannot inspect the deck, ask for a new deck, have the cards reshuffled or evaluate the dealer. He may believe that his selection of a particular option generated the successful hand but only the machine and its predetermined program knows the real cause and effect." (65 Ops.Cal.Atty.Gen. 123, 128-129 (1982).)[4]

We believe the Mini-Boy 7 also presents the user with, at most, only an illusion of skill; it is predominantly a game of chance.

---

[4] See also *Com.* v. *Two Electronic Poker Game Machines* (1983) 502 Pa. 186 [465 A.2d 973, 978], where the court noted: "The expert witness who testified on behalf of the tavern owner is a professor of statistics at Carnegie-Mellon University. He stated that he could win at a rate four and one half (4½) times greater using a 'smart' strategy (*i.e.*, employing his knowledge of statistics) than by using a 'dumb' strategy (*i.e.*, always 'standing pat' on the initial hand dealt by the machine.) Based on his play of the Electro-Sport machine, he concluded that skill was a 'definite factor' in playing the game. [Citation.] On cross-examination, however, he conceded that chance was also a factor both in determining the initial hand dealt and the cards from which one can draw, concluding that there was a 'random element' present. [Citation.] He could not say how to apportion the amounts of skill and chance. The expert witness for the Commonwealth testified that no skill was involved in playing the game.

"While appellee has demonstrated that some skill is involved in the playing of Electro-Sport, we believe that the element of chance predominates and the outcome is largely determined by chance. While skill, in the form of knowledge of probabilities, can improve a player's chances of winning and can maximize the size of the winnings, chance ultimately determines the outcome because chance determines the cards dealt and the cards from which one can draw—in short, a large random element is always present. [Citation.] That the skill involved in Electro-sport is not the same skill which can indeed determine the outcome in a game of poker between human players can be appreciated when it is realized that holding, folding, bluffing and raising have no role to play in Electro-Sport poker. Skill can improve the outcome in Electro-Sport; it cannot determine it." (465 A.2d at p. 978.)

Finally, we note there are a number of cases holding poker and other casino games are predominantly games of chance particularly when played against a machine. (See, e.g., *Mills-Jennings of Ohio, Inc.* v. *Dept. of Liquor Control* (1982) 70 Ohio St. 2d 95 [24 Ohio Ops.3d 181, 435 N.E.2d 407, 409]; *Automatic Music and Vending* v. *Liquor* (1986) 426 Mich. 452 [396 N.W.2d 204, 206]; *Territory* v. *Jones* (1908) 14 N.M. 579 [99 P. 338, 340];[5] *Com.* v. *Two Electronic Poker Game Machines, supra*, 502 Pa. 186 [465 A.2d 973, 978]; *Brackner* v. *Estes* (Tenn. Ct. App. 1985) 698 S.W.2d 637; Annot. (1985) 38 A.L.R.4th 930.)

We conclude the trial court correctly determined the Mini-Boy 7 is a slot machine as defined by the Penal Code.

## II

### *Due Process Clause*

The owners contend the judgment must be reversed because Penal Code section 335a,[6] which provides for the confiscation and destruction of slot machines, violates the constitutional guaranty of due process by not providing for a hearing before destruction of slot machines. We need not reach that issue since even assuming Penal Code section 355a were unconstitutional, reversal would not follow. The owners have, in fact, received a hearing and a judicial determination that the Mini-Boy 7 video game is an

---

[5] As the court stated in *Territory* v. *Jones, supra*, 99 P. 338, 340: "Slot machines are mechanical gamblers, and, being impassive and having no sensations of any sort, they are more likely to win than gambling games which are run by gamblers, who have all of the human passions and feelings. Playing against a slot machine is a struggle between a man and a machine—a man with nerves and emotions—a machine with no nerves and no emotions."

[6] Penal Code section 335a provides:

"In addition to any other remedy provided by law any machine or other device the possession or control of which is penalized by the laws of this State prohibiting lotteries or gambling may be seized by any peace officer, and a notice of intention summarily to destroy such machine or device as provided in this section must be posted in a conspicuous place upon the premises in or upon which such machine or device was seized. Such machine or device shall be held by such officer for 30 days after such posting, and if no action is commenced to recover possession of such machine or device, within such time, the same shall be summarily destroyed by such officer, or if such machine or device shall be held by the court, in any such action, to be in violation of such laws, or any of them, the same shall be summarily destroyed by such officer immediately after the decision of the court has become final.

"The superior court shall have jurisdiction of any such actions or proceedings commenced to recover the possession of such machine or device or any money seized in connection therewith.

"Any and all money seized in or in connection with such machine or device shall, immediately after such machine or device has been so destroyed, be paid into the treasury of the city or county, as the case may be, where seized, said money to be deposited in the general fund."

illegal slot machine. We have upheld that determination on appeal. To reverse as the owners suggest would not change that determination or result in the return of the Mini-Boy 7 video games to the owners.

## DISPOSITION

The judgment is affirmed.

Wiener, J., and Work, J., concurred.

A petition for a rehearing was denied December 14, 1990.