[No. B134202. Second Dist., Div. One. July 27, 2000.]

THE PEOPLE ex rel. BILL LOCKYER, as Attonrey General, etc.,
Plaintiff and Appellant, v.
PACIFIC GAMING TECHNOLOGIES, Defendant and Respondent.

**COUNSEL**

Bill Lockyer, Attorney General, Richard Frank, Chief Assistant Attorney General, Sara J. Drake, Acting Assistant Attorney General, and Timothy M. Muscat, Deputy Attorney General, for Plaintiff and Appellant.

Edward J. Horowitz for Defendant and Respondent.

**OPINION**

**VOGEL (Miriam A.), J.**—Pacific Gaming Technologies (PGT) places VendaTel vending machines in bus stations, truck stops, and other places where people are likely to buy prepaid telephone calling cards. Unlike ordinary vending machines, the VendaTel has a "sweepstakes" feature that pays out money. The VendaTel looks like a slot machine. It acts like a slot machine. It sounds like a slot machine. The trial court nevertheless said that

it is not a slot machine. In our view, if it looks like a duck, walks like a duck, and sounds like a duck, it is a duck.[1] And so it is with this duck. We reverse.

## FACTS

PGT has marketed its telephone card vending machines in other parts of the country. In 1997, when it decided to market the VendaTel in California, PGT knew there might be a problem and voluntarily contacted the Attorney General (who represents the Division of Gambling Control of the Department of Justice). On August 26, 1998, representatives of the Attorney General's office inspected the VendaTel. On August 31, the Attorney General filed this action for declaratory and injunctive relief, asking for a determination that the VendaTel is an illegal gambling device and slot machine within the meaning of sections 330a, 330b, and 330.1 of the Penal Code.[2] PGT answered, and both parties thereafter moved for summary judgment.[3] The undisputed evidence shows that:

— The VendaTel is a large freestanding metallic box (about the same size as a slot machine) with a large video display monitor. A computer inside each VendaTel operates the machine.

— At the top of the video display monitor, the user is informed, "This is not a gaming device" and, below that, "$ DISCOUNTS $ PRE-PAID PHONE CALLS." The word "Sweepstakes" is prominently displayed, with an explanation that each user has the opportunity to win a cash prize of $1 to $100.

---

[1]See *Pieper v. Commercial Underwriters Ins. Co.* (1997) 59 Cal.App.4th 1008, 1014 [69 Cal.Rptr.2d 551] (" ' "if it looks like a duck, walks like a duck and quacks like a duck, it's a duck"—not a platypus' "); *Aetna Casualty & Surety Co. v. Humboldt Loaders, Inc.* (1988) 202 Cal.App.3d 921, 929, fn. 5 [249 Cal.Rptr. 175] (" 'if it looks like a duck, if it walks like a duck and if it quacks like a duck, it should be treated as a duck' "); *Provost v. Unger* (E.D. La. 1990) 752 F.Supp. 716, 721 ("if it looks like a duck, walks like a duck, and quacks like a duck, it is a duck"); *In re North* (Bankr. D.Vt. 1991) 128 B.R. 592, 594 (" 'if it looks like a duck, walks like a duck, and quacks like a duck, it must be a duck' "); *Strength v. Alabama Dept. of Finance* (Ala. 1993) 622 So.2d 1283, 1289 (" 'If it looks like a duck, walks like a duck, and quacks like a duck, it must be a duck' "); compare *Perry v. Robertson* (1988) 201 Cal.App.3d 333, 335, fn. 1 [247 Cal.Rptr. 74].

[2]Undesignated section references are to the Penal Code. The complaint also alleged that the VendaTel is an unlawful lottery (§ 319) or other controlled game (Bus. & Prof. Code, § 19805, subd. (e)), and those issues were considered by the trial court. Our conclusion that the VendaTel is a slot machine makes it unnecessary to consider the other grounds on which the Attorney General attempted to enjoin its use in California.

[3]The State filed the first motion for summary judgment, then took it off calendar when PGT explained that it had developed a new machine. On January 25, 1999, the State inspected the new machine, then filed a new motion for summary judgment based on that machine, which was followed by PGT's motion for summary judgment. The motions were heard at the same time. The inspection was videotaped, and the tape is part of the record on appeal. We have viewed it.

When not in use, the screen displays a large, flashing $100 bill. Sweepstakes rules are posted on the side of the VendaTel (e.g., no purchase is necessary, users must be 18 years of age or older). A preset computer program determines the results of the sweepstakes. The user cannot control the results.[4]

— To operate a VendaTel, the user inserts a bill ($1, $5 or $10) into the machine's bill acceptor, then (once for each dollar inserted) pushes a red button located on a control panel below the video display monitor. There is another button that offers instructions in Spanish.

— The VendaTel responds with audio and visual displays. The audio sounds like a slot machine. The screen shows three animated spinning reels with depictions of United States currency (in denominations ranging from $1 to $100). The bills spin in the same manner that fruit and other things spin on slot machines. When the reels stop spinning, the user wins the "sweepstakes" if three identical bills are aligned. If the user wins, the machine announces, "You've just won 10 bucks" (or whatever the amount may be). The cash prize is the amount of the aligned bills (e.g., if the three $100 bills are aligned, the prize is $100). Win or lose, the user receives a ticket for each dollar inserted. The top part of the ticket shows the result of the "sweepstakes" (and may be redeemed at the business where the machine is located). The bottom part of the ticket is the telephone calling card (in the form of a personal identification number which may be used to place one call for up to five minutes of prepaid telephone time anywhere in the United States). If the user has inserted more than $1, the screen flashes, "Press Button to Spin Again!"

— All users who insert money into the VendaTel are eligible to win a cash prize. Conversely, a user may enter the sweepstakes without purchasing a telephone card. To do so, the user fills in and mails a postcard provided for that purpose. When PGT receives the postcard, a free opportunity is exercised on the user's behalf (at a "dedicated" VendaTel). If the user wins the sweepstakes, PGT mails a check to the user.

On this evidence and on a demonstration of the VendaTel conducted in the courtroom, the trial court held that the VendaTel is not a slot machine, lottery or other controlled game. The State's motion was denied, PGT's

---

[4]Odds tables are loaded into the computer. At the time this case was before the trial court, the VendaTel had a "10 percent payout structure" (the VendaTel pays out $500 in prizes for every $5,000 paid into the machine) with "predetermined winners" spread out over a period of time. The user cannot "sit and play" to determine a logical sequence of payouts.

motion was granted, and a judgment was entered in favor of PGT. The State appeals.[5]

## Discussion

The State contends the VendaTel contains "the elements of a slot machine." We agree, and therefore do not consider the parties' other arguments.

Subdivision (1) of section 330b makes it illegal to possess (or do anything with) a slot machine. Subdivision (2) of section 330b defines a slot machine as any device "that is adapted . . . for use in such a way that, as a result of the insertion of any piece of money or coin or other object, . . . such machine or device is caused to operate or may be operated, and by reason of any element of hazard or chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money . . . or thing of value . . . which may be exchanged for any money . . . or which may be given in trade, irrespective of whether it may, apart from any element of hazard or chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise, indication of weight, entertainment or other thing of value." Subdivision (4) of section 330b exempts pinball and other "amusement machines" that are "predominantly games of skill."[6]

Given the plain language of section 330b, it is clear that the VendaTel is a slot machine. By the insertion of money and purely by chance (without any skill whatsoever), the user may receive or become entitled to receive money. To avoid this conclusion, PGT points to section 330.5 and claims an exemption. PGT's reliance on section 330.5 is misplaced.

---

[5]After the trial court's ruling, PGT again modified the VendaTel. Although the State's motion for reconsideration (based on the change) was denied, the trial court clarified that its judgment applied only to the machine, mode of operation, and marketing program that was before the court at the April 1999 hearing. Since our review is limited to the record made in the trial court, the same is true of this opinion.

[6]Section 330.1 overlaps section 330b but the differences do not have anything to do with this case—except for the fact that section 330.5, the exemption on which PGT relies and which is discussed below, applies to section 330.1 but not to section 330b, a fine point ignored by PGT and the State. In theory, at least, the exemption available under section 330.5 would not apply to a prosecution brought under section 330b, and this fact in itself would resolve this case in favor of the State. It appears that sections "330b and 330.1 . . . were enacted in the same legislative session, under different bills. . . . The legislative history reflects the view that enactment of both bills would pose no problem, because they did not conflict." (*Trinkle v. Stroh* (1997) 60 Cal.App.4th 771, 778, fn. 4 [70 Cal.Rptr.2d 661].) Since no conflict arose on the appeal before the court in *Trinkle,* that court did not consider the matter. Since the State does not base its claim of nonexemption on the fact that section 330.5 does not apply to section 330b, we follow *Trinkle*'s lead.

Section 330.5 provides, as relevant, that "Sections 330.1 to 330.4, inclusive, . . . shall not apply to music machines, weighing machines and machines which vend cigarettes, candy, ice cream, food, confections or other merchandise, in which there is deposited an *exact consideration* and from which in every case the customer obtains that which he purchases . . . ." (Italics added.) PGT says that it fits within the exemption because the VendaTel dispenses a five-minute phone card for every dollar inserted. This argument begs the question. Since the machine also dispenses a chance to win the sweepstakes, it gives *more than* the merchandise—which means the sum deposited is not the "exact consideration" for the telephone card.[7] (*Merandette v. City and County of San Francisco* (1979) 88 Cal.App.3d 105, 113-114 [151 Cal.Rptr. 580] [a reward of extended play is a "thing of value" within the meaning of the slot machine statutory scheme].)

As the Third District explained in *Trinkle v. Stroh, supra,* 60 Cal.App.4th 771, section 330.5 means what it says. Although the vending machine in *Trinkle* dispensed music and prizes instead of telephone calling cards and prizes, the case is otherwise indistinguishable from the one now before us, and the rules announced there quite clearly apply here. These were the facts in *Trinkle*: John Trinkle and others owned vending and amusement machines, including "Match 5 Jukeboxes" that they rented to business establishments. After six of the Match 5 machines were seized by the Department of Alcoholic Beverage Control (ABC), the owners sued to recover the machines, alleging that no criminal prosecutions had been filed and that the machines were not gaming devices. (60 Cal.App.4th at pp. 774-775.) The trial court held that the Match 5 Jukeboxes were illegal slot machines. The Court of Appeal agreed.

Each Match 5 Jukebox consisted of a standard jukebox with a "Match 5" device attached to the top. "The front panel of the Match 5 device contained thirty colored lights, five each of six different colors. Players deposited $1 into a bill validator or coin slot in the jukebox (not in the Match 5 device) and selected four songs to be played. These machines would not operate if less than $1 was deposited. Before each song was played, the lights on the

---

[7]In the trial court, PGT insisted that Coca-Cola and M&M's are dispensed from vending machines and that they too offer sweepstakes with purchases thereby providing "more" than is paid in by the user. PGT does not claim discriminatory enforcement but suggests, instead, that this means there is nothing illegal about the VendaTel. The problem with this argument is that there is no evidence to support it (PGT did not offer a scintilla of evidence about any other vending machine or sweepstakes or product, and no such evidence was offered by the State). It is therefore immaterial that the trial court accepted an argument based upon what the State of California might or might not allow with regard to Cokes and M&M's. For this reason, we do not address PGT's assertion on appeal that it is just doing what everyone else does.

Match 5 device randomly flashed and then stopped, with five of the lights remaining lit. If all five remaining lights were the same color, the player who chose the song won a money jackpot, which was displayed on the front of the Match 5 device. The jackpot was increased by 5 cents for each 25 cents deposited into the machine. The jackpot came out of [Trinkle's] proceeds but was paid out by a bartender or clerk." (*Trinkle v. Stroh, supra,* 60 Cal.App.4th at pp. 775-776.)

The owners insisted that their Match 5 Jukebox was exempt under section 330.5 "because in every case the customer gets what he or she pays for—songs." (*Trinkle v. Stroh, supra,* 60 Cal.App.4th at p. 781.) The ABC, in turn, said the customers did *not* get what they paid for " 'in every case,' because some customers g[o]t more than what they paid for—the jackpot." (*Id.* at p. 782.) *Trinkle* agreed with the ABC, adopting the trial court's finding that, " 'once the elements of chance and prize are added to a vending machine, the consideration paid from the player-purchaser's perspective is no longer solely for the product.' " (*Ibid.*) Put another way, "[a]n otherwise illegal machine does not become legal merely because it plays music, gives a person's weight, vends food, etc." (*Ibid.*)

The Match 5 Jukebox, said the court, was simply an " 'attempt to circumvent the gaming laws by adding the element of chance and prize to a vending machine. Once the element of chance is added, people are no longer paying just for the product regardless of the value given that product by the vender. From the perspective of the [Match 5 Jukebox] player-purchases, they may be paying for both the songs and the chance at winning. Indeed, many players may care little about the songs. Their main focus may be the game. This is particularly true when the machine requires that four songs be selected. The potential cash payoff may be more attractive than the four songs one is forced to select.' " (*Trinkle v. Stroh, supra,* 60 Cal.App.4th at p. 782.)

According to *Trinkle,* "section 330.5 states on its face that it is 'expressly' providing certain machines are not illegal. Thus, it is expressly providing what is implicit in other statutes. That the legality of such machines may be *implicit* in sections 330b and 330.1 (by virtue of the machines not meeting the definition of illegal machines) does not prevent the Legislature from expressly stating in a separate statute what is implicit in the defining statute." (*Trinkle v. Stroh, supra,* 60 Cal.App.4th at p. 782.) The court rejected the owners' contention that the exemption was intended to apply unless the machine gave back something of *lesser value* than the consideration paid (e.g., if the machine took a dollar and gave back a roll of mints

worth only a dime, plus a chance to win a game). When the owners claimed the songs were worth the full amount deposited, the court explained that their position "in effect would impose a qualification on the statutes which is not apparent from the language of sections 330b and 330.1—the qualification that the value of the item sold equate exactly with the amount deposited. This would burden the courts with making economic decisions. Had the Legislature intended such a qualification, it could have and would have said so." (*Trinkle v. Stroh, supra,* 60 Cal.App.4th at p. 783.)

We are not impressed with PGT's efforts to avoid the rules announced in *Trinkle.* PGT says "the trial court in *Trinkle* found that many players were attracted to the potential cash payoff and cared little about the four songs they were compelled to purchase," but that "the Attorney General presented no similar evidence with regard to PGT's telephone card vending machine, nor may any such inference be drawn from the manner in which the machine dispenses the telephone cards." There is *nothing* in the opinion in *Trinkle* to suggest that "evidence" on that point was presented to the trial court, only the logical inference that there, as here, any reasonable person looking at the machine would recognize its true purpose and the probable intent of its users. PGT says that its machine, unlike the Match 5 Jukebox, does not increase the payoff with each use or automatically connect a chance at a prize with the sale of a product. So what? With or without those features, the VendaTel meets the statutory definition of an illegal slot machine (§§ 330b, 330.1) and fails to qualify for the exemption (§ 330.5).

The problem with our dissenting colleague's attack on *Trinkle* is that it suffers from the same flaw he finds in *Trinkle.* Either way, we must resort to implication. *Trinkle* notes that section 330.5 " 'expressly' " provides that certain machines are not illegal, then explains that, although the legality of such machines may be implicit in sections 330b and 330.1 (by virtue of the machines not meeting the definition of illegal machines), this "does not prevent the Legislature from expressly stating in a separate statute what it is implicit in the defining statute." (*Trinkle v. Stroh, supra,* 60 Cal.App.4th at p. 782.) By this implication, *Trinkle* gives meaning to all three sections (330b, 330.1, and 330.5). By its implication, the dissent rejects *Trinkle*'s common-sense approach and urges a result that would legalize the use of a machine the Legislature quite plainly intended to prohibit. We find this result strained and unnecessary since, as the dissent concedes, "[n]either section 330.1 nor 330b mention[] ordinary vending machines." (Dis. opn., *post,* p. 714.) As did *Trinkle,* the dissent resorts to implication: "By implication, . . . ordinary vending machines are not illegal because they provide no element of chance. Under sections 330b and 330.1, unless the vending machine can be adapted

or readily converted into a slot machine, it is not illegal." (Dis. opn., *post*, p. 714.) Of course, the dissent also ignores the fact that the VendaTel *is* a vending machine that *does* provide an element of chance—if it isn't chance, what is it that determines whether the customer wins $100 for his $1?

Since the undisputed evidence establishes that the user of a VendaTel (whom PGT usually calls a "customer" but sometimes slips and calls a "player"), without any skill whatsoever but rather as the result of an element of chance obtained by the insertion of money, may become entitled to receive prize money in addition to the telephone calling card, and thereby receives more than the amount of consideration paid, the trial court's decision is plainly wrong. The State's motion should have been granted, PGT's motion denied. (§§ 330b, 330.1, 330.5; *Hotel Employees & Restaurant Employees Internat. Union v. Davis* (1999) 21 Cal.4th 585, 593 [88 Cal.Rptr.2d 56, 981 P.2d 990] [since 1911, section 330a has prohibited all slot machines, and section 330b, enacted in 1950, has redoubled the prohibition; the "Penal Code's broad definitions of slot machines include virtually every kind of stand-alone gaming device"]; *Merandette v. City and County of San Francisco, supra*, 88 Cal.App.3d at pp. 113-114; *Score Family Fun Center, Inc. v. County of San Diego* (1990) 225 Cal.App.3d 1217 [275 Cal.Rptr. 358].)

DISPOSITION

The judgment is reversed, and the cause is remanded to the trial court with directions to enter a new judgment in favor of the State of California (and, in furtherance thereof, to hold such additional hearings, if any, as may be required). The State is awarded its costs of appeal.

Aragon, J.,* concurred.

**ORTEGA, Acting P. J.**—I dissent. In my view, the more specific exemption statute excludes the VendaTel from the prohibition of the more general anti-slot-machine legislation.[1]

The legality of ordinary vending machines (those which dispense uniform merchandise for exact consideration and provide no element of chance) is beyond dispute. This case, however, concerns the legality of a machine

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]Because the majority's ruling renders the other issues moot, I express no opinion on whether the VendaTel constitutes an illegal lottery, a valid sweepstakes, or an illegal game subject to governmental regulation.

which possess the qualities of *both* a slot machine and an ordinary vending machine. Under Penal Code sections 330b and 330.1,[2] the VendaTel is an illegal slot machine because it provides an element of chance, regardless of whether it also dispenses telephone cards. Section 330.5, however, exempts from section 330.1 (and, by reasonable implication, section 330b) machines like the VendaTel which in every instance and for exact consideration provide "the customer . . . that which he purchases." (§ 330.5.)

According to the majority, sections 330b and 330.1 should prevail over section 330.5 to render the VendaTel illegal. The majority essentially refuses to give legal effect to section 330.5 by limiting its protection to ordinary vending machines that are indisputably legal regardless of any exemption. Accordingly, the majority's approach renders section 330.5 fatally superfluous.

Sections 330b, 330.1, and 330.5, however, may reasonably be read in a manner more favorable to the criminal defendant, without frustrating the overall purpose of the anti-slot-machine statutes or leading to absurd results. Honoring the narrow exemption afforded by section 330.5 would not obliterate the more general prohibition of sections 330b and 330.1 against slot machines which are also vending machines. For example, slot machines which only *occasionally* and *randomly* dispense merchandise would still be illegal under sections 330b and 330.1, because they would not fall under section 330.5. If the VendaTel only occasionally dispensed calling cards, it plainly would not fall under section 330.5. Accordingly, it is possible to give effect to section 330b and 330.1 without rendering section 330.5's exemption superfluous.

The majority's approach, construing section 330.5 so that it applies only to ordinary vending machines, ignores the plain language of that statute for no compelling reason other than to avoid giving legal effect to the exemption. Nothing in the legislative history of sections 330b, 330.1, and 330.5 supports this restrictive reading. If the majority is concerned about applying the exemption to a higher stake machine that did not exist when the statutes were written 50 years ago, the matter should be brought to the Legislature's attention. Otherwise, the majority violates this division's own pronouncement that criminal gambling statutes must be strictly construed and applied exactly as they are written. (*Chapman v. Aggeler* (1941) 47 Cal.App.2d 848, 853 [119 P.2d 204].) We are not free to indulge in judicial interpretation to make penal statutes say what we think they should. (*Ibid.*) Giving effect to these statutes as written, it is inescapable that the exemption applies to the

---

[2]All further statutory references are to the Penal Code.

VendaTel because in every instance, for "exact consideration . . . the customer obtains that which he purchases." (§ 330.5.)

Given that the last substantive changes to the slot machine statutes were made in 1950, the time is probably ripe for the Legislature to reconsider these statutes. Should the Legislature decide to vacate the exemption for machines which are *both* slot machines and vending machines, it could repeal section 330.5.

SECTION 330a

In 1911, the California Legislature enacted section 330a, which made it a misdemeanor to possess a slot machine. "Slot machine" is implicitly defined in section 330a as a machine "upon the result of action of which money or other valuable thing is staked or hazarded, and which is operated, or played, by placing or depositing therein any coins, checks, slugs, balls, or other articles or device, or in any other manner and by means whereof, or as a result of the operation of which any merchandise, money, representative or articles of value, checks, or tokens, redeemable in, or exchangeable for money or any other thing of value, is won or lost, or taken from or obtained from such machine, when the result of action or operation of such machine . . . is dependent upon hazard or chance." (§ 330a.)

## A. *Ordinary Vending Machines Are Not Prohibited*

Ordinary vending machines, or machines that consistently deliver the exact item purchased for exact consideration, are not illegal slot machines because they contain no element of chance. Nothing in the language of section 330a suggests otherwise. In 1940, the Appellate Department of the Superior Court of San Francisco County pointed this out, stating: "Machines of this character [illegal slot machines] should not be confused with slot machines which have for their purpose the vending of merchandise without any element of chance. In ordinary vending machines a coin is deposited in a slot, a lever is pulled, and merchandise is received for the coin deposited. Each person depositing a coin of like denomination receives the same value of merchandise as any other person, no element of chance or uncertainty whatsoever existing. The only reason a person would not receive the article purchased is that the machine is not working properly or it is not stocked. In the legitimate vending machine there is no more chance or uncertainty involved than in a purchase from a clerk, he handing the merchandise to the purchaser and the purchaser paying him the stipulated price." (*People v. Kay* (1940) 38 Cal.App.2d Supp. 759, 761 [102 P.2d 1110].)

One authority similarly states: "It appears to be generally conceded that ordinary slot vending machines which only vend merchandise or service of a

uniform quantity and quality are not for the purpose of playing a game of chance in any sense of the term, inasmuch as there is no chance or uncertainty in the result thereof. In general, however, a slot machine which, in return for a coin deposited therein, dispenses merchandise represented to be of the value of such coin, accompanied at occasional and uncertain intervals by a varying amount of money, trade checks, tokens, or coupons, or more broadly, one which provides an element of chance, is a gambling device." (38 Am.Jur.2d (1999) Gambling, § 104, pp. 153-154, fns. omitted.)

## B. *Vending Machines With an Added Element of Chance*

After section 330a was enacted, it became unclear whether vending machines that provided both a product and an additional element of chance were prohibited by that section. Section 330a does not expressly prohibit ordinary vending machines that can be or have been configured to provide, in addition to the product sold, an element of chance. Seizing on that possible loophole, enterprising manufacturers began offering vending machines that were also gambling devices. Those early machines were apparently quite profitable. As one author noted, "Vending machines, the forerunners of coin-operated gambling devices, first appeared in the United States in the early nineteenth century. For pennies or nickels, vending machines delivered candy, weighed people, told fortunes, or played music. By the beginning of the twentieth century, however, entrepreneurs realized that great profits could be made by converting vending machines into gambling devices. The conversion was made by adding an element of chance and the promise of cash payouts." (Rychlak, *Video Gambling Devices* (1990) 37 UCLA L.Rev. 555, 558-559, fns. omitted.)

Two diverging California trial decisions, both published in Ragland California Superior Court Decisions, illustrate the judicial uncertainty regarding the legality under section 330a of vending machines with an added element of chance. Both cases involved a machine which for a nickel would dispense one package of chewing gum. In addition, an indicator on the front of the machine would state whether the next nickel would produce simply another package of gum, or, the package of gum plus anywhere from two to 20 checks that were redeemable in merchandise.

Because the customer would always know exactly what the next nickel would buy, one superior court held that the gum machine was *not* a slot machine in violation of section 330a. That court stated, "as the indicator plainly notifies the person operating the machine in advance that he will receive such premium, it cannot be said that there is any uncertainty, hazard,

or chance connected with its operation." (*Ex parte Potter* (Super. Ct. Sonoma County 1924) 1 Rag. 59, 62.) The *Potter* court distinguished a Nevada case (*Ex parte Piorotti* (1919) 43 Nev. 243 [184 P. 209]) in which a machine that dispensed cigars or drinks or nothing, with "chance being a material element[,]" was held to be illegal. (*Ex parte Potter, supra,* 1 Rag. at p. 62.)

Another superior court, however, found the same gum machine as in *Potter* was a slot machine in violation of section 330a. (*Schultz v. Stanford* (Super. Ct. Solano County 1921) 1 Rag. 120.) Because the indicator would state what the next nickel would produce, the *Schultz* court concluded the "inducement to the player is not the particular amount which he will receive for the nickel which he now deposits, but the hazard as to what he will turn up on the indicator for the next play. [¶] . . . [¶] If the matter be considered solely from the standpoint of one play, then there is no element of chance. It is perfectly plain that the player will receive exactly what he pays for and that he will get either more or less than value received for his money, depending upon what the indicator shows when the play is made. He never gets exactly five cents' worth. The owner of the machine also will make a loss on the transaction, or will make more than the usual profit on a package of gum. However, it is inconceivable that a player will play but once. It is safe to assume that at the first play he will find the machine set to pay only a package of gum; either the last player or 'The house' will naturally have seen to that. Therefore he makes the first play hoping that the indicator will be turned to a point next time which will afford him the chance to 'Beat the machine[.]' The lure is the chance of winning from 10 to 100 cents by the deposit of a nickel. It may be stated with certainty that the owner of the machine takes no chance of loss. He may lose on the one play, but it must be evident that the machine would not be offered for the use of the public unless the owner knew it would bring him a profit." (*Id.* at pp. 121-122.)

C. *Strict Construction of Section 330a—Chapman v. Aggeler*

In 1942, this division published *Chapman v. Aggeler, supra,* 47 Cal.App.2d 848, which strictly construed section 330a and limited its reach to its exact terms. *Chapman* held that prosecution under section 330a of the mere possessor of vending machines that were capable of being configured for use as gambling devices required proof of their actual use for gambling.

The machines in *Chapman* could be adjusted for use either as ordinary vending machines or as vending machines that dispensed both merchandise and, on random occasions, metal slugs, chips, or tokens in varying numbers. The machines were seized while in Chapman's shop for storage or repair.

Chapman was not in the business of operating any of the machines, but simply rented them. He sometimes rented the machines to movie studios as props. He exercised no supervision or control over the operation of the machines once they left his shop.

This division ruled that Chapman's mere possession of the machines did not violate section 330a, without proof of their actual use for gambling. According to *Chapman*, the scope of the statute's reach turned on the meaning of the word *"is,"* as used in section 330a: the section outlaws any machine that *"is* operated, or played," as a result of which a thing of value *"is* won or lost," when the operation of the machine *"is* dependent upon hazard or chance." (§ 330a, italics added.)

This same issue had been addressed two years before *Chapman* in *People v. Kay, supra,* 38 Cal.App.2d Supp. 759. The machines in *Kay* were slot machines that, unlike the machines in *Chapman*, could *only* be used for gambling. They had three rotating reels that depicted different pictures. Depending on which combination of pictures appeared when the reels stopped, the machines would pay varying sums in tokens or coins, or nothing at all.

*Kay* held that section 330a prohibited the mere possession of the slot machines, regardless of whether they had actually been used as gambling devices, or for amusement only. *Kay* stated that the word "is," as used in section 330a, did not constitute a limitation on the statute's reach, but was merely descriptive of the uses to which a slot machine may be put. According to *Kay*: "This construction of our statute is not only proper but necessary if any effect is to be given to the statute and the purposes of its enactment, to-wit: the suppression of gambling devices. A contrary construction for all practical purposes would place section 330a in the position of being superfluous, and we cannot believe that was the intention of the legislature." (*People v. Kay, supra*, 38 Cal.App.2d at pp. Supp. 764-765.)

In *Chapman*, this division disagreed with *Kay* and applied a strict construction to section 330a. In particular, *Chapman* stated: "The offense here denounced is the possession of a slot machine which '*is* operated, or played,' not which *may* be operated or played." (*Chapman v. Aggeler, supra,* 47 Cal.App.2d at p. 852, first italics added.) "Instead of being descriptive, the clause above mentioned is in our opinion a limitation in fact and in law upon the scope of the section and literally determines what in our judgment is the sole purpose of the law, *viz.*, prohibition of gambling by such devices and not, as the Kay case holds, 'the suppression of gambling devices' and the 'absolute prohibition of 'any slot or card machine.' " (*Id.* at p. 855.)

*Chapman* pointed out that the New York penal statute on which section 330a was based had been judicially construed to require proof of the actual use of the machine as a gambling device. (*Chapman v. Aggeler, supra,* 47 Cal.App.2d at pp. 852-853.) *Chapman* also noted: "There is no California statute that prohibits, as does section 43.07 of the Los Angeles Municipal Code, the possession of a lottery device. Neither is the manufacture of slot machines within the state prohibited, as it is by section 982 of the Penal Code of New York, nor the sale of gambling implements or devices, as it is by section 970-a of the same code. The fact that our lawmakers have seen fit not to legislate upon these subjects, which are altogether within their province, serves to remind the court that in passing upon laws relating to gambling nothing can be taken for granted. It is still lawful in this state to play certain card games for money or valuable stakes, and pari-mutuel gambling on horse-races by those in attendance has recently been made lawful by our lawmakers. When legislators speak through statutes, their enactments must be given a strict interpretation. The law must be applied as it is written. It cannot be extended by judicial interpretation." (*Id.* at p. 853.)

Significantly, *Chapman* refused to read into section 330a the words that had been omitted, stating, "noticing the omission from section 330a of important language which in other jurisdictions has been employed by legislative bodies, we cannot accept the reasoning of the court in the *Kay* case, *supra,* as controlling." (*Chapman v. Aggeler, supra,* 47 Cal.App.2d at p. 853.) Instead, *Chapman* followed the lead of *Ex parte Clark* (1921) 54 Cal.App. 507 [202 P. 50], which held that an illegal gaming conviction under section 330 required proof that the games were played for wagers of money or property, and not purely for amusement. *Chapman* reasoned that under *Clark,* a conviction for violating section 330a would also require proof that the machine "actually was operated as a gaming device in the manner described in the statute." (*Chapman v. Aggeler, supra,* 47 Cal.App.2d at p. 854.)

### SECTIONS 330b AND 330.1

In 1950, the Legislature passed two more bills dealing with slot machines, Assembly Bill No. 34, which added section 330b to the Penal Code, and Assembly Bill No. 1, which added sections 330.1 through 330.6. Both bills were in response to this Division's ruling in *Chapman* that the plain

language of section 330a does not prohibit the bare possession of slot machines.[3]

Both sections 330b and 330.1 expressly made it a crime to, among other things, manufacture, own, possess, sell, transport, or rent a slot machine. Both sections specifically made it illegal to possess a slot machine, regardless of whether the machine was ever operated as a gambling device. Section 330b states in relevant part that a slot machine "is one that is adapted, or may readily be converted into one that is adapted, for use" as a gambling device. (§ 330b, subd. (2).) Similarly, section 330.1 defines a slot machine as a machine that "is, or may be, used or operated" as a gambling device.

Neither section 330.1 nor 330b mentioned ordinary vending machines. By implication, however, ordinary vending machines are not illegal because they provide no element of chance. Under sections 330b and 330.1, unless the vending machine can be adapted or readily converted into a slot machine, it is not illegal.

As for machines that are *both* gambling devices and vending machines, however, sections 330b and 330.1 made them expressly illegal. Both statutes broadly defined "slot machine" to include any machine that provides (or can be adapted or readily converted to provide) an element or hazard or chance, "irrespective of whether it may, apart from any element of hazard or chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise, indication of weight, entertainment or other thing of value." (§ 330b, subd. (2).) Section 330.1 contains a similar definition.

SECTION 330.5

The first portion of section 330.5, which is the only portion of that section relevant to this appeal, provides: "It is further expressly provided that Sections 330.1 to 330.4, inclusive, of this code shall not apply to music machines, weighing machines and machines which vend cigarettes, candy, ice cream, food, confections or other merchandise, in which there is deposited an exact consideration and from which in every case the customer obtains that which he purchases."

---

[3] Assembly Bill Nos. 1 and 34 were very similar. Rather than consolidate the two bills, the Legislature chose to pass both. The Office of Legislative Counsel prepared a "Supplemental Report on Assembly Bill 1 and Assembly Bill 34," dated April 20, 1950, which recommended that Assembly Bill No. 34 be chaptered first, and Assembly Bill No. 1 be "given a later chapter number, [so] the courts can give full effect to the provisions of both bills, notwithstanding the possibility that they may hold that the provisions of A.B. 1, under such circumstances, have impliedly repealed the provisions of A.B. 34 to such extent as they duplicate the provisions of A.B. 34."

Significantly, section 330.5 states that section 330.1 (and, by reasonable implication, § 330b) *"shall not apply"* to certain vending machines. (Italics added.) Because it is beyond dispute that ordinary vending machines are legal, construing section 330.5 to be limited to ordinary vending machines effectively renders the exemption fatally superfluous. If section 330.5 applies only to ordinary vending machines, repealing section 330.5 would have no effect because ordinary vending machines are already legal without the exemption.

Because section 330.5 states that sections 330.1 and 330b "shall not apply" to a certain class of machines, there must exist a type of machine which is otherwise *illegal* under sections 330b and 330.1, but is saved from illegality by section 330.5. Unlike ordinary vending machines which are perfectly legal without regard to section 330.5, the VendaTel is an *illegal* slot machine under sections 330b and 330.1 because it provides an element of hazard or chance. But under section 330.5, the VendaTel is saved from illegality because in every case, for exact consideration, the customer receives that which he purchases. Accordingly, the VendaTel falls under all three statutes—it falls under the general prohibition in sections 330b and 330.1 against slot machines that provide an element of chance, and it also falls under the exemption in section 330.5 for machines that in every case, for exact consideration, give the customer the item he purchased.

### STATUTORY CONSTRUCTION

The broad effect of sections 330b and 330.1 was to outlaw "virtually every kind of stand-alone gaming device." (*Hotel Employees & Restaurant Employees Internat. Union v. Davis* (1999) 21 Cal.4th 585, 593 [88 Cal.Rptr.2d 56, 981 P.2d 990].) The Attorney General contends that by outlawing the VendaTel as an illegal slot machine, we would be following the legislative intent underlying sections 330b and 330.1.

To adopt the Attorney General's position, however, would be to ignore the plain meaning of section 330.5. Section 330.5 unambiguously states that section 330.1 (and, by reasonable implication, § 330b) shall not apply to machines which provide, in every case, the item purchased for exact consideration. I can find no justification for ignoring the clear and unambiguous language of the exemption statute, or construing it to apply only to ordinary vending machines.

"It is settled that ' "We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.]" ' [Citation.] Stated otherwise, 'When statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it.' [Citations.]

"We have declined to follow the plain meaning of a statute only when it would inevitably have frustrated the manifest purposes of the legislation as a whole or led to absurd results. [Citations.] Neither consequence is threatened here." (*People v. Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].)

By giving effect to the limited exemption created by section 330.5 for a certain class of slot machines, we would be following the plain meaning of the three statutes rather than selectively rendering one of them mere surplusage. In addition, we would avoid judicially amending the exemption statute by adding language omitted therefrom.

In order to limit section 330.5's exemption to ordinary vending machines, we would have to add the word "only" to the statute so that it would read: Section 330.1 "shall not apply" to machines "in which there is deposited an exact consideration and from which in every case the customer obtains [only] that which he purchases." Adding the word "only" to the statute would eliminate the exemption presently afforded by section 330.5 to machines, like the VendaTel, which in every case the customer obtains the item purchased for exact consideration. Reading the word "only" into the statute would also transform it into a purely declarative statement that ordinary vending machines, which are already perfectly legal, are not slot machines.

As one author stated, "one of the problems with many state statutes is that they were drafted with older devices in mind." (Rychlak, *Video Gambling Devices, supra*, 37 UCLA L.Rev. at p. 587.) In addition, "Problems with gambling laws often develop when new sections are simply added to existing laws, instead of repealing the outdated provisions and replacing them with the new provisions." (*Id.* at p. 590.)

In any event, it is not entirely clear what the Legislature intended when it created the section 330.5 exemption in 1950. By that time, the Legislature presumably was aware of the existence of the nickel gum machine (described in *Ex parte Potter, supra*, 1 Rag. 59, and *Schultz v. Stanford, supra*, 1 Rag. 120) which consistently dispensed one package of gum for every nickel deposited and occasionally dispensed two to 20 checks that were redeemable in merchandise. In addition, the Legislature was also presumably aware of the existence of the cigar machine (described in *Ex parte Piorotti, supra,* 184 P. 209), which randomly dispensed cigars or drinks or nothing at all.

Following the enactment of sections 330b and 330.1, the gum machine became illegal because it provided an element of hazard or chance, regardless of whether it also dispensed gum. Under section 330.5, however, the

gum machine was exempt from sections 330b and 330.1 because in every case it gave one package of gum for each nickel deposited. The cigar machine, on the other hand, was outlawed entirely because it provided an element of hazard or chance, and did not always dispense the item purchased.

The wisdom of outlawing slot machines but permitting machines that are both slot machines and vending machines is for the Legislature to decide. As this Division noted in *Chapman v. Aggeler, supra,* 47 Cal.App.2d 848, the Legislature has seen fit to legalize many forms of gambling. We cannot assume the Legislature intended to outlaw the nickel gum machine simply because it outlawed the cigar machine. As this Division cautioned in *Chapman:* "[I]n passing upon laws relating to gambling nothing can be taken for granted. . . . When legislators speak through statutes, their enactments must be given a strict interpretation. The law must be applied as it is written. It cannot be extended by judicial interpretation." (*Id.* at p. 853.)

In my view, *Trinkle v. Stroh* (1997) 60 Cal.App.4th 771 [70 Cal.Rptr.2d 661], which limited section 330.5's exemption to ordinary vending machines, was wrongly decided. In *Trinkle,* the owners of the disputed machines contended the exemption applied to the Match 5 Jukebox, which consistently played five songs for each dollar deposited. The owners argued that construing the section 330.5 exemption narrowly to apply only to ordinary vending machines would render the exemption fatally superfluous. *Trinkle* rejected the owners' contention stating, "That the legality of such machines may be *implicit* in sections 330b and 330.1 (by virtue of the machines not meeting the definition of illegal machines) does not prevent the Legislature from expressly stating in a separate statute what is implicit in the defining statute." (60 Cal.App.4th at p. 782.)

*Trinkle*'s analysis would be correct if section 330.5 were rewritten, as discussed above, to add the word "only." As presently written, however, section 330.5's exemption applies to any slot machine which in every case, for exact consideration, provides the item purchased. Section 330.5 is not, in its present form, a purely declarative statement regarding the legality of ordinary vending machines.

*Trinkle* expressly refused to consider the types of machines that existed in 1950 when the three statutes were enacted. (*Trinkle v. Stroh, supra,* 60 Cal.App.4th at p. 783.) Accordingly, *Trinkle* failed to articulate a sufficient reason to ignore the plain wording of section 330.5 and implicitly revise its language so that it would apply only to ordinary vending machines with no element of chance.

Similarly, the majority in this case has failed to justify its modification of the plain language of section 330.5. By failing to follow the clear and unambiguous statutory language without adequate justification for doing so, the majority has abused its discretion. Accordingly, I would apply the section 330.5 exemption to the VendaTel and leave it to the Legislature to make any statutory amendments it deems necessary.

Respondent's petition for review by the Supreme Court was denied November 1, 2000.