CHARLES MULLER, APPELLEE, v. WM. F. STOECKER CIGAR COMPANY, APPELLANT.

FILED JUNE 13, 1911. No. 16,446.

1. **Gaming:** GAMBLING DEVICES: SLOT MACHINES. A slot machine so operated that the operator placing a coin therein and taking a chance on what will be the result of the deposit of the coin, whether to win or to lose, is a gambling device.

2. ――――: ILLEGAL BUSINESS: SLOT MACHINES. A cigar store where such machines are set up for the use of customers and are used by them to the advantage of the proprietor of the store, either by the winnings or the stimulation of the trade by the chance of winning by the customer, is an illegal business.

3. **Contracts:** LEGALITY: RESCISSION: RECOVERY. A contract for the purchase of a store and business where a part of the goods and fixtures purchased consist of a number of slot machines kept in use in the store for the purpose of gambling and thereby stimulating and increasing the business is an illegal contract, and so long as the same remains executory may be repudiated and rescinded, and money paid thereon may be recovered back by the person paying the same.

4. **Estoppel** to be available as a defense to an action must be pleaded.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed.*

*James W. Hamilton,* for appellant.

*A. S. Ritchie* and *Charles L. Fritscher, contra.*

REESE, C. J.

This is an appeal from a judgment of the district court for Douglas county. The facts as shown by the bill of exceptions are substantially as follows: Plaintiff is a young man, a former resident of the city of Omaha, and at the time of entering into the contract, hereinafter described, was about 24 years of age. On the 20th day of November, 1905, the defendant, the Wm. F. Stoecker Cigar Company, was engaged in the business of wholesale and retail dealers in cigars, tobacco and smokers' articles, conducting one wholesale and retail business and two other retail stands in the city of Omaha, when plaintiff purchased a half interest in the business, paying in advance the sum of $500 in cash, when the parties entered into the following written agreement: "Omaha, Neb., November 20, 1905. Received by Wm. F. Stoecker as president of the Wm. F. Stoecker Cigar Company from Chas. Muller five hundred dollars ($500) earnest money to apply on purchase price of a one-half ($\frac{1}{2}$) interest in our wholesale and retail cigar, tobacco and smokers' articles business. It is understood that the stock and fixtures shall be figured at cost prices. Inventory to be taken not later than December 1st, 1905, and the above deal completed not later than December 5th, 1905, otherwise the above mentioned earnest money of five hundred dollars ($500) shall be forfeited. It is herewith mutually agreed that each of us will devote our full time to the business. If one of the parties hereto wishes to withdraw or sell part of his holdings after the first of January, 1907, the other party shall have the first right to buy such shares or holdings. Wm. F. Stoecker Cigar Co., W. F. Stoecker, Prest. Chas. Muller." The invoice was entered upon and continued until completed some days later. In making

the invoice a large number of devices known as slot machines were inventoried as a part of the stock. The number of those machines in the stores and in use is not clearly shown, but there were probably about 20 of them. No objection was made to them, and they were accepted by plaintiff as a part of the stock of merchandise purchased by him. The payment of the remainder of the purchase price was, by mutual consent, deferred for some days, owing to the absence from the city of plaintiff's father, whom plaintiff desired to consult, preferring that the purchase should receive the approval of his paternal ancestor before final payment. Upon the return of plaintiff's father, who disapproved of the purchase, plaintiff refused to complete the transaction, assigning as his reason therefor that his father had other plans for him. He demanded the return of the $500 paid. Defendant refused to comply with the demand and insisted that plaintiff comply with his contract.

Without entering upon a description of the slot machines in use in the business, we think it must be, and is, conceded that they were all gambling devices, used probably not so much as yielding a revenue to the stores in the way of winnings, but for the purpose of stimulating trade, the purchasers preferring to take a chance of heavier winnings rather than to buy goods directly at the regular and established prices. While, in the long run, the business may not have been so much the gainer from the winnings proper, yet by allowing others to play the hazard the sales were very much increased. That they were gambling devices is clear enough. It is also apparent that plaintiff offered no objection to them, and was in no way conscience smitten, either at the time of the purchase, or thereafter, until he learned by consultation with others that he might avoid his contract and recover back the money paid upon the theory that the purchase of the slot machines was against good morals and public policy, and which his then enlightened conscience could not withstand. He sued defendant for the return of the money

paid, instituting his suit in the county court as "for money had and received." Such proceedings were had as resulted in an appeal to the district court, where an amended petition was filed and in which is set out the whole transaction of the purchase of the half interest in the business, the presence and use of slot machines as gambling devices as a part of the purchase, the alleged illegality of the contract, that the business of defendant was illegal and unlawful, and that plaintiff was entitled to the repayment of the $500, for which he asked judgment.

The answer of defendant sets up the contract of purchase, the payment of the $500, the completion of the invoice, the promise by plaintiff to complete the transaction by the payment of the remainder of the purchase price by a date named, his failure to make the final payment, and that during the whole time of the negotiations, the invoice, and the payment of the $500, plaintiff well knew and understood the character of all the stock and fixtures, and the same was satisfactory to him. The reply is a general denial. A jury trial was had, and upon the completion of the evidence the court, on motion of plaintiff, gave the jury a peremptory instruction to return a verdict in favor of plaintiff for the full amount claimed, which was done, and upon which judgment was rendered. Defendant appeals.

The assignments of error are: (1) The verdict is not sustained by sufficient evidence; (2) the verdict is contrary to law; (3) errors of law occurring at the trial; (4) the court erred in sustaining the motion of the plaintiff directing the jury to return a verdict for the plaintiff; (5) the court erred in giving the instructions directing the jury to return the verdict for plaintiff; and (6) error in overruling the motion for a new trial.

There is no evidence in the record of any improper effort on the part of defendant to induce plaintiff to make the purchase of a half interest in the business. So far as the evidence discloses, no criticism can be made upon the conduct of defendant, its officers or agents, in the nego-

tiations leading up to and including the execution of the written contract, above set out, and the payment of the $500. The evidence is also clear that in making the purchase the plaintiff knew of the presence of the slot machines, the uses to which they were and would be applied, and that he was purchasing a half interest in them, and to which he offered no objection, and was entirely willing to make the purchase. At the time of the purchase the use of the slot machines was common in practically all the cigar stores in the city of Omaha, as well as elsewhere, and there seemed to be no thought among proprietors of establishments owning them that·their use was in violation of law, or was subject to condemnation. But these considerations cannot enter into the case as controlling the rights of the parties, however much the course pursued by plaintiff may be condemned by fair-minded people as showing a want of the proper conception of business integrity. The contract of purchase was never executed. Nothing was done subsequent to the payment of the $500 and the invoice. It does not appear that plaintiff entered into possession, or took any part in the management of the business. The slot machines were so operated that the operator by placing his coin within and starting the action of the machine stood to win or lose by a chance. This constituted gambling and the machines gambling devices. *Lang v. Merwin,* 99 Me. 486; *Territory v. Jones,* 14 N. M. 579, 99 Pac. 338, annotated in 20 L. R. A. n. s. 239. It would therefore follow that defendant's business, at least to the extent of the use of the slot machines, was an illegal one. The machines constituted a part of the stock purchased by plaintiff. Their use constituted a part —an important part—of the carrying on of the business. It must follow that the contract of purchase was an illegal one. It seems to be the general holding of the courts that, so long as an illegal contract remains executory and the illegal purpose has not been put into operation, the one who has paid money thereon to the other party may repudiate the contract and recover back the money. *Stover*

*v. Flower*, 120 Ia. 514, and cases there cited; *McCall v. Whaley*, 52 Tex. Civ. App. 646, 115 S. W. 659.

It is urged by defendant that plaintiff having first repudiated the contract and demanded the repayment of the $500, not upon the ground of the illegality of the contract, but because his father so demanded, he cannot "mend his hold" by afterward assigning the illegality of the contract as his reason for his action, and that he is now estopped to defend upon the latter ground. Without deciding whether any estoppel could exist in this kind of a case, we think it sufficient to say that no such estoppel is pleaded in the answer. Estoppel to be available must be pleaded. 1. Neb. Syn. Digest, p. 1181.

We find no error in the record, and the judgment of the district court is

AFFIRMED.

BARNES and SEDGWICK, JJ., dissenting.

We are unable to concur in the majority opinion. While there can be no doubt of the soundness of the conclusion that a contract to do an illegal thing may be rescinded by either party before it is completed, yet it is equally clear that one who attempts to avail himself of that rule must show that the contract which he seeks to rescind provides for the doing of some illegal act. It seems to us that the defendant failed to make such a showing. There is nothing in the agreement of sale or in the transactions which took place between the plaintiff and defendant, as disclosed by the record, which requires either party to do an illegal thing. The contract did not require the use of slot machines in the business after the sale to the plaintiff. He was at liberty to insist on the discontinuance of their use if such use was illegal, and the presumption is that their use would have been discontinued. The machines in and of themselves were harmless and could be legally sold. The contract between the parties is a simple one, and, so far as the substance of it is concerned, it is perfectly fair and legitimate. It is true that the defendant stated in his testimony as a justification of his past conduct in using

the machines that all others engaged in the cigar business did so, and that it had been a necessary part of the business, but it does not appear that when their use had been declared illegal the defendant designed to continue such use. The contract does not mention the slot machines. It simply appears in the evidence that there were such machines amongst·the property and that they had been used in the business, and it seems that their use theretofore had not been considered unlawful by the defendant. After the completion of the sale plaintiff would have had equal authority with the defendant to control the manner of conducting the business, and there is nothing in the agreement that directly or indirectly binds either of them to continue the business in the same manner in which it had been transacted. There being no agreement in the contract for the use of the slot machines in the business, the parties did not agree to do an illegal thing, and we doubt whether the law will presume that they contemplated such a course. Even if they did at that time intend to use the machines, there was no binding agreement that they should continue to do so. The plaintiff could at any time put a stop to it, and the presumption is that he would do so.

To our minds the record clearly shows that the plaintiff is trying dishonestly to avail himself of an afterthought to avoid a perfectly legal contract which was entered into by both parties in good faith, and that his real reason for seeking a rescission and recovery of the money paid to bind the bargain is that his father persuaded him to engage in a different business at another place. No presumption of the illegality of the contract should be indulged in to enable him to recover the earnest money paid, which, so far as the record discloses, was not more than sufficient to indemnify the defendant for the interruption of his business and the time spent in taking the inventory which was made at plaintiff's request to ascertain the amount he was to pay for a half interest in the defendant's cigar and tobacco business.

To our minds the judgment of the district court was wrong and should be reversed.

ROSE, J., concurs in this dissent.