2001 ND 67

**MIDWESTERN ENTERPRISES, INC., Plaintiff and Appellant,**

v.

**Wayne K. STENEHJEM, North Dakota Attorney General, Defendant and Appellee.**

No. 20000168.

Supreme Court of North Dakota.

April 12, 2001.

John J. Mahoney, Mahoney & Mahoney, Center, for plaintiff and appellant.

David W. Huey, Assistant Attorney General, Bismarck, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Midwestern Enterprises, Inc. ("Midwestern") appealed the district court's summary judgment in favor of the Attorney General, concluding Midwestern's Lucky Strike two-minute phone card dispensing device is a gambling apparatus as defined by N.D.C.C. § 12.1–28–01(3) and a coin-operated gaming device as de-

fined by N.D.C.C. § 12.1–28–02(4)(a). We affirm.

## I

[¶ 2] Midwestern placed six Lucky Strike two-minute phone card dispensing devices in Minot and West Fargo in April and May of 1999. The Lucky Strike devices are distributed nationally by PrePaid Plus, Inc. of Austin, Texas. Midwestern is the exclusive distributor of Lucky Strike devices in North Dakota.

[¶ 3] The Lucky Strike device dispenses a perforated slip of paper for each dollar inserted. Half of the slip of paper is the two-minute pre-paid phone card, the other half is a game piece giving the buyer a chance to win up to $500 in cash.

[¶ 4] According to a product description from PrePaid Plus, Inc., the Lucky Strike device "closely resembles a Las Vegas style casino machine." The Lucky Strike device is the size and shape of a slot machine with a screen that displays a video graphic of three spinning wheels projected as a grid of nine symbols aligned in three horizontal and three vertical rows. When money is inserted in the machine and the "dispense" button is pushed, the wheels spin, the lights blink, and the music plays. Cash prizes are awarded if the symbols are aligned in specific configurations. The combinations are determined randomly by a cartridge in the device. The configuration of the spinning wheels image is printed by an internal printer onto the half of the slip of paper that is the game piece. Winning combinations are noted on the printed game piece. Winners can redeem their game piece for cash from the clerk at the facility where the Lucky Strike device is located.

[¶ 5] The pre-paid phone card on the other half of the slip of paper is pre-printed on the roll of paper in the machine. The phone card side lists a toll-free phone number and code number for use to access the two-minute phone call to anywhere in the United States; however, the phone card can only be used once, even if the phone call lasts for less than two minutes.

[¶ 6] The Lucky Strike device accepts one, five, ten and twenty dollar bills; however it does not return change. Once a twenty dollar bill is inserted, the customer cannot buy one card and get nineteen dollars in change; rather, the customer can push the dispense button on the front of the machine twenty times for twenty two-minute phone cards and twenty chances to win cash prizes.

[¶ 7] The winning grid configurations are listed on the upper left-hand corner of the Lucky Strike device. Each cartridge contains 7,500 game pieces with 1,288 winners for a total of $4,875 in prizes. This is a sixty-five percent pay out. The $4,875 in prizes are distributed as listed below.

| Winners | Odds | Number | Dollar Value |
|---|---|---|---|
| $1 | 1:7.5 | 1,000 | $1,000 |
| $5 | 1:41.6 | 180 | $ 900 |
| $10 | 1:94 | 80 | $ 800 |
| $25 | 1:500 | 15 | $ 375 |
| $50 | 1:1250 | 6 | $ 300 |
| $100 | 1:1500 | 5 | $ 500 |
| $500 | 1:3750 | 2 | $1,000 |
| | | 1,288 | $4,875 |

[¶ 8] Out of the total of $7,500 inserted to play the entire cartridge, $4,875 is paid out as cash prizes. PrePaid Plus, Inc. is paid $1,125, or $0.15 per phone card, to handle the phone time, the cartridge loading, the free entries, and to offer a toll-free number for customer service. This leaves $1,500 per cartridge, $0.20 per card, of gross profits to be split between Midwestern and the facility where the Lucky Strike device is placed.

[¶ 9] The rules for the Lucky Strike game and the odds of winning are posted on each machine. A supply of postage-

paid postcards are available on the side of the machine that can be used to send for a free game piece with a limit of one per request.

[¶ 10] Although one location reported only a few phone cards were discarded, a high percentage of the phone cards were reported discarded in the other locations in North Dakota according to affidavits from personnel at the locations. In four of the locations with a Lucky Strike device, the facility owners reported the unused and discarded phone cards were placed in a basket and made available, free for the taking. Despite the availability of free phone cards, people continued to insert dollar bills into the Lucky Strike device that dispensed phone cards and a chance to win cash.

[¶ 11] Midwestern communicated with the North Dakota Attorney General's office regarding the legality of the Lucky Strike device from late March to July of 1999. On July 19, 1999, the Attorney General wrote a letter to Midwestern stating the Lucky Strike devices were illegal under North Dakota law. On July 20, 1999, Midwestern filed a complaint seeking declaratory and injunctive relief. Midwestern also sought, and the trial court granted, a temporary restraining order and an order to show cause commanding the Attorney General to desist and refrain from any action against the Lucky Strike devices. On August 12, 1999, the Attorney General sought and obtained a restraining order and order to show cause restraining Midwestern from disposing of any business records. One hearing on both of the orders to show cause was held on August 24, 1999. The district court subsequently vacated both temporary restraining orders.

[¶ 12] The parties agreed a justiciable controversy existed and a declaratory judgment proceeding would be appropri-ate. Both parties submitted motions for summary judgment. A hearing was held and the district court subsequently entered judgment declaring the Lucky Strike device is a gambling apparatus as defined by N.D.C.C. § 12.1–28–01(3) and a coin-operated gaming device as defined by N.D.C.C. § 12.1–28–02(4)(a). The district court ordered Midwestern pay costs and disbursements in the sum of $1,435.58.

## II

[¶ 13] Summary judgment is a procedure for promptly and expeditiously disposing of an action without a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts or if resolving factual disputes would not alter the result. *DeCoteau v. Nodak Mut. Ins. Co.*, 2000 ND 3, ¶ 7, 603 N.W.2d 906. On appeal from a district court's summary judgment, questions of law are fully reviewable. *Jones v. Barnett*, 2000 ND 207, ¶ 6, 619 N.W.2d 490. In this case, the material facts are undisputed.

## III

[¶ 14] Midwestern argues the trial court was incorrect in ruling the Lucky Strike device was a "gambling apparatus" as defined by N.D.C.C. § 12.1–28–01(3) because the phone card sales and sweepstakes promotion do not constitute gambling as defined by N.D.C.C. § 12.1–28–01(1) since no consideration is given for the chance to win a cash prize.

[¶ 15] Section 12.1–28–01(3), N.D.C.C., defines a gambling apparatus to include devices used or usable in gambling activity.

"Gambling apparatus" means any device, machine, paraphernalia, or equipment that is used or usable in the playing phases of any gambling activity,

whether that activity consists of gambling between persons, or gambling by a person involving the playing of a machine. Gambling apparatus does not include an amusement game or device as defined in section 53–04–01.[1]

In order to determine if a device is used for the playing phases of a gambling activity we first consider Midwestern's issue of whether or not the Lucky Strike game is a gambling activity.

[¶ 16] Section 12.1–28–01(1), N.D.C.C., defines gambling.

"Gambling" means risking any money, credit, deposit, or other thing of value for gain, contingent, wholly or partially, upon lot, chance, the operation of gambling apparatus, or the happening or outcome of an event, including an election or sporting event, over which the person taking the risk has no control. Gambling does not include:

a. Lawful contests of skill, speed, strength, or endurance in which awards are made only to entrants or to the owners of entries; or

b. Lawful business transactions, or other acts or transactions now or hereafter expressly authorized by law.

■ [¶ 17] Section 12.1–28–01(1), N.D.C.C., defines gambling as risking something of value for gain contingent on chance, over which the person taking the risk has no control. The three elements of gambling are generally recognized as consideration, prize, and chance. *Middlemas v. Strutz*, 71 N.D. 186, 189, 299 N.W. 589, 591 (N.D.1941); 29 A.L.R.3d 888, *Promotion Schemes of Retail Stores as Criminal Offense Under Anti–Gambling Laws* § 3 (1970).

[¶ 18] Midwestern claims the element of consideration is missing from the Lucky Strike device because for every dollar spent the customer receives a two-minute emergency phone card. Therefore, Midwestern argues, the fact the customer may also receive an additional cash prize is an extra bonus because the dollar was consideration paid for the phone card, not for the chance to win a cash prize.

[¶ 19] Similar arguments were made in a series of cases decades ago involving vending machines that dispensed gum or mints along with a chance to win something additional of value. For example, in *State v. Apodoca*, 32 N.M. 80, 251 P. 389, 389 (1926) the appellant argued "the player operating the machine in question is not engaged in a game of chance, because, while he enjoys the possibility of winning, there is no chance of loss, since, for each nickel deposited, he is sure to obtain value in chewing gum." The New Mexico court rejected this argument, holding the vending machine was a gambling device. *Id.* Other courts agreed a machine that dispenses merchandise represented to be the value of the money inserted, plus at uncertain intervals an additional varying amount of money or something else of value by chance, is a gambling device. 38 Am. Jur.2d *Gambling* § 104 (1999). *See, e.g., Boynton v. Ellis*, 57 F.2d 665 (10th Cir. 1932); *Mueller v. Wm. F. Stoecker Cigar Co.*, 89 Neb. 438, 131 N.W. 923 (1911); *State v. Branney*, 62 Wyo. 40, 160 P.2d 972 (1945). Since the return to the customer is therefore dependent on an element of chance, the device was determined to be a gambling device, even if the player is assured something of value for his money for

---

1. " 'Amusement games or devices' includes such coin-operated games and devices as electric ray guns, music boxes, picture boxes, bumperball or pinball, and other similar coin-operated miniature games or devices, whether or not they show a score, but does not apply to any machine which may constitute a lottery under the laws of this state." N.D.C.C. § 53–04–01(1).

each play. 38 Am.Jur.2d *Gambling* § 104 (1999). *See, e.g., Kirk v. Morrison,* 108 Fla. 144, 146 So. 215 (1933); *Ferguson v. State,* 178 Ind. 568, 99 N.E. 806 (1912); *Meyer v. State,* 112 Ga. 20, 37 S.E. 96 (1900).

[¶ 20] According to Nelson Rose, a law professor who studies gambling law, early courts were split on whether the dispensing of mints with every nickel played converted the slot machine into a legitimate vending machine, "until it was pointed out that players continued to put in their nickels long after the mints had run out." I. Nelson Rose, *Gambling and the Law* 89 (1986). At four of the North Dakota locations with the Lucky Strike devices, personnel reported the phone cards were often discarded. Discarded phone cards were placed in a basket and were available free for the taking. Despite this ready availability of two-minute phone cards, people continued to put their dollars into the Lucky Strike devices. Since phone cards were available free for the taking, it is logical to conclude people paid their dollars for a chance to win cash. The similarity to the gum and mint cases is obvious.

[¶ 21] The Mississippi Court of Appeals recently determined a very similar machine called the Lucky Shamrock was a slot machine. *Mississippi Gaming Commission v. Six Electronic Video Gambling Devices,* — So.2d ——, 2001 WL 19737 (Miss.App. Jan 09, 2001). The Lucky Shamrock, for one dollar, dispenses a two-minute emergency long distance calling card and a game piece. *Id.* The Lucky Shamrock simulates a slot machine, with spinning nine squares, lights and music. *Id.* Winning game pieces pay one dollar up to five hundred dollars, payable by the clerk at the store. *Id.* It is illegal to possess a "slot machine" in Mississippi in

areas not authorized for casinos. Prohibited by Miss.Code Ann. § 97–33–7 is:

Any slot machine other than an antique coin machine as defined in Section 27–27–12 which delivers, or is so constructed as that by operation thereof it will deliver to the operator thereof anything of value in varying quantities, in addition to the merchandise received, and any slot machine ... that is constructed in such manner as that slugs, tokens, coins or similar devices are, or may be, used and delivered to the operator thereof in addition to merchandise of any sort contained in such machine, is hereby declared to be a gambling device.

[¶ 22] The Mississippi Court of Appeals concluded "a slot machine that delivers no guaranteed product at all is illegal, and so is one that always delivers specific merchandise and also something else of value in varying quantities. It is the possible prize that makes use of the machine of great interest to a class of customers as well as to the [Mississippi Gaming] Commission." *Six Electronic Video Gambling Devices,* — So.2d ——, 2001 WL 19737 (Miss.App. Jan 09, 2001).

[¶ 23] The Court of Appeals of California also determined the VendaTel machine which dispenses with each dollar paid a five-minute phone card and a game piece for a chance to win up to $100, was a slot machine. *People ex rel. Lockyer v. Pacific Gaming Technologies,* 82 Cal.App.4th 699, 98 Cal.Rptr.2d 400, 402 (2 Dist.2000). California statute makes it illegal to possess a slot machine and California Penal Code § 330b(2) defines a slot machine as any device:

that is adapted, or may readily be converted into one that is adapted, for use in such a way that, as a result of the insertion of any piece of money or coin or other object, or by any other means, such machine or device is caused to op-

erate or may be operated, and by reason of any element of hazard or chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money ... or thing of value ... which may be exchanged for any money ... or which may be given in trade, irrespective of whether it may, apart from any element of hazard or chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise, indication of weight, entertainment or other thing of value.

[¶ 24] While Pacific Gaming Technology claimed the VendaTel fit an exception to the statute defining slot machines because it dispensed a five-minute phone card with every dollar inserted, the court responded "[s]ince the machine also dispenses a chance to win the sweepstakes, it gives *more than* the merchandise—which means the sum deposited is not the 'exact consideration' for the telephone card." (Citations omitted; emphasis in original.) *Pacific Gaming Technologies,* 98 Cal. Rptr.2d 400, 403 (2 Dist.2000).

[¶ 25] Midwestern relies on an earlier Mississippi case which held a telephone card with a "scratch-and-win" game piece on one side with a chance to win prizes ranging from $1 to $50,000 was not a lottery. *Mississippi Gaming Commission v. Treasured Arts, Inc.* 699 So.2d 936, 940 (Miss.1997). No machine was used to dispense this phone card; therefore the issue was not whether the dispensing machine was a slot machine but rather whether the calling card was a lottery under Mississippi law. The Mississippi Supreme Court determined the Treasured Arts phone card was not a lottery because there was no proof the amount paid for the telephone card was more than the retail price of the telephone time. *Id.* at 940. In view of the

above discussion we find the Mississippi case unpersuasive.

[¶ 26] The Lucky Strike device dispenses a two-minute emergency phone card plus a chance to win up to $500 in cash for every dollar paid. Putting a dollar into a Lucky Strike device is "risking any money, credit, deposit, or other thing of value for gain, contingent, wholly or partially, upon lot, chance, the operation of gambling apparatus, or the happening or outcome of an event, including an election or sporting event, over which the person taking the risk has no control," and therefore, according to N.D.C.C. § 12.1–28–01(1), it is gambling.

[¶ 27] Midwestern also argues there is no consideration because there is no purchase necessary to play the game. Upon sending the postage-paid postcard or making a written request to the address on the side of the machine, a person can get one free game piece per request. Because of this availability of free play, Midwestern claims the Lucky Strike game is a promotional sweepstakes, not gambling. Midwestern urges us to conclude there is no basis for finding consideration from a person who pays nothing merely because other people voluntarily pay something. It contends the obvious purpose of the sweepstakes promotion is to increase the sales of phone cards.

[¶ 28] But, the limited availability of free play does not exempt the Lucky Strike game from being defined as gambling. Sweepstakes that are commonplace as marketing promotion tools are significantly different than the Lucky Strike game. The high pay-out rate of the Lucky Strike game is a distinguishing feature because it goes to the true purpose of the game.

[¶ 29] Midwestern offers one free Lucky Strike game piece per mailed request and on this basis claims, because no

purchase is necessary, it is as acceptable as a retail promotional sweepstakes. However it does not follow that simply because low-stakes, temporary promotional sweepstakes with pay-out rates of one-half of one percent that offer free play are not pursued as lotteries, we must conclude high-stakes, permanent games with pay-out rates of sixty-five percent are immune from the definition of a lottery because they also offer limited free play. North Dakota has not established, by either legislation or judicial ruling, an exception to the gambling and lottery definitions for promotional sweepstakes. A number of states, rather than finding gambling is acceptable because it has one characteristic of limited free play in common with promotional sweepstakes, have concluded retail promotions violate gambling and lottery statutes despite the availability of limited free play. *See Boyd v. Piggly Wiggly Southern, Inc.,* 115 Ga.App. 628, 155 S.E.2d 630 (1967); *Kroger Co. v. Cook,* 24 Ohio St.2d 170, 265 N.E.2d 780 (1970); *State ex rel. Schillberg v. Safeway Stores, Inc.,* 75 Wash.2d 339, 450 P.2d 949 (1969).

[¶ 30] Furthermore, the argument that the availability of limited free play means the Lucky Strike game is not gambling is weakened by North Dakota's definition of a lottery which does not require that all participants pay to play. N.D.C.C. § 12.1–28–01(2).

> "Lottery" means any plan for the distribution of a thing of value, whether tangible or intangible, to a person or persons selected by chance from among participants, *some or all of whom* have given a consideration for the chance of being selected. (Emphasis added.)

[¶ 31] It is adequate to be defined as a lottery if some of the participants have given a consideration for the chance to be selected as a winner. According to Midwestern's response to interrogatory questions, only seven people requested free Lucky Strike game pieces by mail in the three months the devices were operated in North Dakota. Only two of these were members of the general public, the remaining five being police officers or people associated with the gaming industry. Midwestern answered they did not know if any free game pieces were distributed on site, but that practice was eliminated after consultation with the Attorney General. Therefore, nearly all of the participants gave "a consideration for the chance of being selected." N.D.C.C. § 12.1–28–01(2).

[¶ 32] Despite Midwestern's characterization of the Lucky Strike game as a promotional sweepstakes with the purpose to increase the sales of phone cards, people continued to play even when phone cards were available free of charge. People were not paying their dollars for phone cards but rather, were paying their dollars for a chance to win up to $500 in cash. The element of consideration is not missing from the Lucky Strike game.

[¶ 33] The plain language of N.D.C.C. § 12.1–28–01(3) prohibits devices that are "used or usable in the playing phases of any gambling activity." The Lucky Strike game is gambling as defined by 12.1–28–01(1), as discussed above; therefore it is a gambling apparatus on the basis of being used for gambling. While not every device which might conceivably be used for gambling, but is not, would be a gambling apparatus, the Lucky Strike device is designed like a slot machine and is used for gambling. Therefore, the Lucky Strike device is a gambling apparatus as defined by N.D.C.C. § 12.1–28–01(3).

## IV

[¶ 34] The Lucky Strike device is also a "coin-operated gaming device" as defined by N.D.C.C. § 12.1–28–02(4).

> a. As used in subsection 3 but with the exceptions provided by subdivision b

of this subsection, the term "coin-operated gaming device" means any machine that is:

(1) A so-called "slot" machine that operates by means of the insertion of a coin, token, or similar object and which, by application of the element of chance, may deliver, or entitle the person playing or operating the machine to receive cash, premiums, merchandise, or tokens; or

(2) A machine that is similar to machines described in paragraph 1 and is operated without the insertion of a coin, token, or similar object.

b. The term "coin-operated gaming device" does not include a bona fide vending or amusement machine in which gambling features are not incorporated as defined in section 53–04–01, or an antique "slot" machine twenty-five years old or older that is collected and possessed by a person as a hobby and is not maintained for the business of gambling.

[¶ 35] Midwestern argues the Lucky Strike device qualifies for the exception of N.D.C.C. § 12.1–28–02(4)(b) because it is a bona fide vending machine "in which gambling features are not incorporated." Once again using the analogy to promotional sweepstakes, Midwestern claims the Lucky Strike device is not gambling because sweepstakes offered by soft drinks sold in vending machines have not been found to violate N.D.C.C. § 12.1–28–02(4). This analogy fails, as previously explained, because the Lucky Strike game is very different from a low pay-out, temporary promotion. The Lucky Strike device does not qualify for the N.D.C.C. § 12.1–28–02(4)(b) exception because gambling features are incorporated in the Lucky Strike device.

[¶ 36] The Lucky Strike device incorporates visual and audio "gambling features." Also, the Lucky Strike device randomly dispenses a chance for cash prizes with each dollar risked, with a pay-out rate of sixty-five percent. The Lucky Strike device accepts one, five, ten and twenty dollar bills in payment for the two-minute phone cards, but does not give change. These are functional "gambling features" incorporated into the Lucky Strike device.

[¶ 37] The Lucky Strike device is designed as a slot machine that operates by means of insertion of dollar bills and "by application of the element of chance, may deliver, or entitle the person playing or operating the machine to receive cash" and therefore is a "coin-operated gaming device" as defined by N.D.C.C. § 12.1–28–02(4)(a). The Lucky Strike device incorporates "gambling features" and therefore does not qualify for the exception described by N.D.C.C. § 12.1–28–02(4)(b).

[¶ 38] We affirm the judgment of the district court.

[¶ 39] SANDSTROM, KAPSNER, MARING and NEUMANN, JJ.