[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} This is an appeal by appellee-appellant, Ohio Liquor Control Commission ("commission"), from a judgment of the Franklin County Court of Common Pleas, reversing an order of the commission finding that appellant-appellee, Freedom Concepts, Inc., violated Ohio Adm. Code ("O.A.C.") 4301:1-1-53 by permitting or allowing gambling on the permit premises.
 {¶ 2} The following facts are taken from the stipulated investigative report prepared by Greg Croft, an agent with the investigative unit of the Ohio Department of Public Safety ("department"). On October 18, 2000, Croft and another agent, George Pitre, arrived at the permit premises and entered the front door. The agents observed two machines, the first appearing to be a video slot machine, called "Lucky Shamrocks," and the second appearing to be a tip-dispensing machine, called "Popp-Opens."
 {¶ 3} The Lucky Shamrocks machine advertised pre-paid phone cards as a prize. The agent described the Lucky Shamrocks machine as similar to a video slot machine, whereby the player inserts $1, $5, $10, $15 or $20 and receives a credit; the player then presses an actuator to spin the bars, attempting to match three like symbols, and retrieves a ticket out of a dispensing area. Agent Pitre inserted $1 into the Lucky Shamrocks machine, receiving one credit, and then pressed the actuator and played the credit with a chance to win a cash prize. Agent Pitre failed to match three like symbols in a row, and thus did not win a prize; however, he did receive a pre-paid, two-minute phone card. Agent Croft secured the pre-paid phone card as evidence.
 {¶ 4} In order to play the "Popp-Opens" machine, a player must insert $1, $5, $10, $15 or $20 into the machine and pick the tip ticket of their choice by pressing the respective button and retrieving the ticket from the dispensing area. Agent Croft inserted $1 into the "Popp-Opens" machine, selected the "Crown Bars" brand ticket, and retrieved the ticket from the dispensing area of the machine. He pulled open all three tabs, indicating no winning prize. The agent secured the tip ticket as evidence.
 {¶ 5} After playing the machines, the agents identified themselves to a bartender and asked to speak to the manager. The bartender pointed to a male, later identified as Frank M. Gronowski. The agents then identified themselves to Gronowski, and advised him of a violation. Agent Pitre questioned Gronowski about the machines and how they are maintained. Gronowski explained that the Lucky Shamrocks machine was owned and maintained by JJ Tickets of 83 Milton Drive, Tallmadge, Ohio. Gronowski informed the agents that the holder of a winning ticket from either machine is paid out by bar personnel on duty; he was unwilling, however, to reveal to the agents whether or not the permit premises profited from the machines. The agents opened both machines and all of the cash was removed and counted, totaling $4,533.
 {¶ 6} Appellee was charged with two gambling violations pursuant to O.A.C. 4301:1-1-53, i.e., permitting or allowing an electronic video gaming device, and permitting or allowing a tip-ticket dispensing machine. The matter came for hearing before the commission on September 13, 2001. The commission issued an order on September 25, 2001, finding that appellee had permitted or allowed gambling on the permit premises, in violation of O.A.C. 4301:1-1-53. The commission ordered the suspension of appellee's liquor permit.
 {¶ 7} Appellee filed a notice of appeal with the trial court from the order of the commission. By decision and entry filed July 31, 2002, the trial court reversed the order of the commission, finding there was no evidence to establish that appellee derived a profit from the machines.
 {¶ 8} On appeal, the commission sets forth the following single assignment of error for review:
 {¶ 9} "The Common Pleas Court abused its discretion and erred to the prejudice of the Liquor Control Commission when it ruled the order of the Liquor Control Commission finding appellant-appellee Freedom Concepts, Inc. guilty of gambling on its liquor permit premises in violation of Rule 4301:1-1-53, Ohio Admin. Code was not supported by sufficient evidence."
 {¶ 10} In Big Bob's, Inc. v. Liquor Control Comm.,151 Ohio App.3d 498, 2003-Ohio-418, this court set forth the applicable standards of review involving an administrative appeal as follows:
 {¶ 11} "Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative and substantial evidence and is in accordance with law. * * *
 {¶ 12} "The common pleas court's `review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court "must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof."' * * * In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. * * *
 {¶ 13} "An appellate court's review of an administrative decision is more limited than that of a common pleas court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621 * * *. In Pons, the Ohio Supreme Court noted, `While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment.' Id. An appellate court does however have plenary review of purely legal questions. * * *" Id., at ¶ 13-15. (Citations omitted.)
 {¶ 14} O. A. C. 4301:1-1-53(B) ("Rule 53") provides that:
 {¶ 15} "No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code."
 {¶ 16} R.C. 2915.01(F) defines "gambling device" as any of the following:
 {¶ 17} "(1) A book, totalizer, or other equipment for recording bets;
 {¶ 18} "(2) A ticket, token, or other device representing a chance, share, or interest in a scheme of chance or evidencing a bet;
 {¶ 19} "(3) A deck of cards, dice, gaming table, roulette wheel, slot machine, or other apparatus designed for use in connection with a game of chance;
 {¶ 20} "(4) Any equipment, device, apparatus, or paraphernalia specially designed for gambling purposes;
 {¶ 21} "(5) Bingo supplies sold or otherwise provided, or used, in violation of this chapter."
 {¶ 22} In the present case, appellee argued before the trial court that there was no evidence it sold tip-tickets or phone cards for profit. The trial court agreed, holding that "there is no evidence to establish that Appellant derived profit from the machines. The mere presence of the machines and money on the permit premises does not support the inference that Appellant operated a scheme of chance for profit."
 {¶ 23} As noted, the machine designated "Popp-Opens" dispenses "tip-tickets." A tip-ticket "represents a chance in a scheme in which a participant gives valuable consideration for a chance to win a prize." Big Bob's, supra, at ¶ 18. As such, "a tip ticket is a `gambling device' pursuant to R.C. 2915.01(F)(2) and 2915.01(C), and therefore also under Ohio Adm. Code 4301:1-1-53(B)." Id. Furthermore, because a tip-ticket dispensing machine dispenses tip-tickets, "a tip ticket dispensing machine is a `gambling device' under R.C. 2915.01(F)(4)." Id.
 {¶ 24} This court has previously found the "Lucky Shamrocks" machine to be a gambling device. See Katmandu v. Liquor Control Comm., Franklin App. No. 02AP-546, 2002-Ohio-6743; Flare Game Technology, Inc. v. Mid-Ohio Vending, Inc. (Feb. 20, 2003), Franklin App. No. 02AP-748. We note that, under the facts of Katmandu, supra, a stipulated report was entered stating that the machine was a gambling device. However, in addition to the stipulated evidence, this court found "no error in the common pleas court's determination that the phone card portion of the ticket was of slight value and that the predominate purpose of operating the machine was to play a scheme or game of chance." Id., at ¶ 20.
 {¶ 25} In this court's subsequent decision in Flare Game Technology, we held in part:
 {¶ 26} "* * * [T]he evidence before the court, viewed most strongly in appellant's favor, supported a finding that the `Lucky Shamrock' machine was a gambling device. The design of the machine to announce a winner with music and flashing lights, the fact that the phone cards were of minimal value, the illusory nature of the offer of a free game piece, the inability of the machine to give change, and the fact that the machine had a 70 percent payout, were all facts which supported the trial court's conclusion that the machine was a gambling device rather than, as appellant claimed, a vending machine."
 {¶ 27} Other jurisdictions have also found this machine, and machines of a similar nature, to be gambling devices. See Black North Assoc., Inc. v. Kelly (2001), 722 N.Y.S.2d 666, 667 (Lucky Shamrock machine operated as a "slot machine" where machine permits player to watch game being played, know that he has a winning ticket prior to opening the ticket and, in fact, only use the ticket as a receipt for redemption); Mississippi Gaming Comm. v. Six Electronic Video Gambling Devices (2001), 792 So.2d 321 (Lucky Shamrock machine that dispensed long distance calling card with each insertion of coin, and that also dispensed game card that could potentially award a prize in varying values, constituted a slot machine); Midwestern Enterprises, Inc. v. Stenehjem (2001), 625 N.W.2d 234, 239 ("Lucky Strike" machine that dispenses two-minute emergency phone card plus chance to win up to $500 in cash for every dollar paid was a gambling apparatus; the device incorporates visual and audio gambling features and randomly dispenses a chance for cash prizes with every dollar risked, with a payout rate of 65 percent); Lockyer v. Pacific Gaming Technologies (2000), 98 Cal.Rptr.2d 400
(telephone card vending machine, "VendaTel," was an illegal slot machine where user, by inserting money, and purely by chance, may receive prize money in addition to calling card, thereby receiving more than the amount of consideration).
 {¶ 28} In accordance with our previous decisions, we similarly conclude that the Lucky Shamrock machine constitutes a gambling device. We note, however, the mere possession of a gambling device on a liquor permit premises does not constitute a violation of Rule 53. Big Bob's, supra, at ¶ 19. Rather, in order to find a violation of the rule, "`the Liquor Control Commission must receive evidence tending to prove the same elements that are required to sustain a criminal conviction of one of the gambling offenses listed in R.C. 2915.01(G).'" Id., quoting VFW Post 8586 v. Ohio Liquor Control Comm. (1998), 83 Ohio St.3d 79, paragraph two of the syllabus. However, as opposed to a criminal conviction, the quantum of evidence required to support a violation of Rule 53 is a preponderance of the evidence standard, and the commission "may draw reasonable inferences based on the evidence before it." Big Bob's, supra, at ¶ 19.
 {¶ 29} R.C. 2915.01(G)(1) defines a "gambling offense" to include any violation of R.C. 2915.02. R.C. 2915.02(A)(2) provides that no person shall "[e]stablish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit[.]"
 {¶ 30} In Loom Lodge 2156 Northfield v. Ohio Liquor Control Comm., Franklin App. No. 02AP-667, 2003-Ohio-38, this court discussed the issue of "profit" in considering a violation of Rule 53, stating in relevant part:
 {¶ 31} "In State v. Posey (1988), 40 Ohio St.3d 420, the Supreme Court of Ohio noted that the state must prove that the gambling at issue was `for profit' in order to sustain a conviction for a gambling offense under R.C. 2915.02. However, in affirming a gambling conviction under R.C. 2915.02, the court noted that a game or scheme of chance conducted for profit is defined by R.C. 2915.01(E) in terms of income. The court noted that to define profit in terms of income, in the context of gambling, is consistent with the common usage of the term `profit' and that there is `no reason why the income produced by the FOE's use of gambling devices is not "profit."'" Id. at 423. Therefore, the court held that the element of profit could be established by proof of income derived from the gambling activity.
 {¶ 32} "In VFW Post 8586, the court again dealt with the element of profit necessary for a gambling conviction. In that case, the gambling devices at issue were electronic video poker machines. The evidence consisted of a document describing how those machines worked and how the odds of winning were stacked against the player. In addition, there was $319 recovered from the machines. Based upon this evidence, the court stated that `it was reasonable for the commission to infer that the video poker machines at issue were operated to generate income.' Id. at 84. Again, the court looked at whether the gambling devices produced income to determine whether the gambling was conducted `for profit.' * * *
 {¶ 33} "Based upon these cases, it is clear that actual profit need not be shown in order to find a violation of Rule 53. * * * Rather, the profit element can be established by proof that the gambling device produced income for the permit holder. * * *" Id., at ¶ 12-14.
 {¶ 34} In Loom Lodge 2156, "the element of profit was established by proof of income from the sale of tip tickets." Id., at ¶ 15. Under the facts of Big Bob's, supra, at ¶ 29, the evidence indicated that the investigative agent purchased five tip-tickets and that only one ticket was a winner in the amount of $2, resulting in Big Bob's receiving income in the amount of $3. This court held that, under such circumstances, the commission reasonably could conclude that Big Bob's violated Rule 53. Similarly, in Shelton v. Ohio Liquor Control Comm., Franklin App. No. 02AP-893, 2003-Ohio-2271, where an agent purchased tip-tickets worth $10, and failed to receive a winning ticket, the $10 in income received by the permit holder constituted reliable, probative and substantial evidence that the permit holder operated game of chance for profit.
 {¶ 35} In the present case, the stipulated evidence indicates that Agent Pitre inserted $1 into the Lucky Shamrocks machine and Agent Croft inserted $1 into the Popp-Opens machine, with neither agent receiving a winning ticket, thus resulting in income to the permit holder in the amount of $2. Contrary to the trial court's finding, and in accordance with precedent, evidence of profit was satisfied by proof of income from the sale of tip and game tickets from the respective machines. Loom Lodge 2156 Northfield, supra. Further, department agents recovered more than $4,000 from the machines deposited there by players, and the stipulated evidence included the tip-ticket payoff schedule. Here, the record contains evidence from which the commission could draw a reasonable inference that appellee promoted, operated or knowingly engaged in conduct that facilitated a game of chance for profit. See VFW Post 8586, supra, at 83-84 (where evidence demonstrated that agents recovered $319 from machines after inserting $3, commission could reasonably infer that video poker machines were operated to generate income). Accordingly, we find that the trial court abused its discretion in holding that the order of the commission was not supported by reliable, probative and substantial evidence.
 {¶ 36} Based upon the foregoing, the single assignment of error of the commission is sustained, the judgment of the trial court is reversed, and this matter is remanded for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
PETREE, P.J., and KLATT, J., concur.